## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| TED S. RICHAN, individually and derivatively and on Behalf of AGEISS, INC.<br><br>    Plaintiff<br><br>    v.<br><br>JEFFREY B. LAWRENCE, DONNA B. LAWRENCE, and AGEISS, INC.<br><br>    Defendants. | Civil Action No:  21-1222<br><br>**VERIFIED COMPLAINT SHAREHOLDER DERIVATIVE**<br><br>**JURY TRIAL DEMANDED** |

## VERIFIED COMPLAINT

TO THE HONORABLE COURT:

COMES NOW Plaintiff Ted S. Richan, on behalf of himself and for the benefit of and on behalf of the Defendant AGEISS, Inc. ("AEGISS"), and all other holders of stock of said company who may be similarly situated, and through the undersigned attorney, very respectfully states, alleges and prays as follows:

## INTRODUCTION

1.      This is a case about how majority shareholders will do anything to regain complete control of a company they agreed to sell, including harming the company itself.  This is a shareholder derivative action brought by Ted S. Richan, the owner of all of the shares of non-voting stock in Defendant AGEISS, Inc. against the two married owners of all of the shares of the voting stock, Jeffrey B. Lawrence and Donna B. Lawrence.

2.      The Defendants induced the Plaintiff to create a Puerto Rico Limited Liability Company and act as the President of AGEISS, Inc. while they collectively pursued lucrative construction contracts in the Republic of Ghana.  All the while, defendants Jeffrey B. Lawrence

6415603

and Donna B. Lawrence offered, and indeed did, agree to sell AGEISS, Inc., to Plaintiff Ted S. Richan.

3.      Within three months of the parties fully executing their agreements relating to the sale of AGEISS, Inc., of all of the non-voting shares of AGEISS being purchased by Plaintiff Ted S. Richan, and of the company having been awarded the lucrative contract in the Republic of Ghana, Jeffrey B. Lawrence and Donna B. Lawrence lit the fires to scorch the earth in a desperate attempt to undo the sale. They fired Plaintiff Ted S. Lawrence, voted through Board resolution to withdraw from the Republic of Ghana contracts, and attempted (unsuccessfully) to "rescind" the sale of AGEISS, Inc. to Plaintiff Ted. S. Richan.

4.      While Jeffrey B. Lawrence and Donna B. Lawrence were experiencing seller's remorse, they would never admit to it and instead fired off pretextual excuses for terminating Plaintiff Ted S. Richan. Among them were that he improperly initiated an Equal Employment Opportunity ("EEO") investigation on an employee favored by Defendants Jeffrey B. Lawrence and Donna B. Lawrence where, in fact, the EEO investigation was legally required after an older employee resigned citing a practice and pattern of harassment and discrimination based on age. Relatedly, Jeffrey and Donna Lawrence claimed s that launching such an internal investigation could potentially lead to other employees resigning, such as the Accounting Manager, who was highly coveted by Defendants Jeff B. Lawrence and Donna B. Lawrence, and that the EEO situation, generally, threatened AGEISS, Inc.'s financial stability. Jeffrey B. Lawrence and Donna B. Lawrence in fact sought to specifically protect the target of the EEO investigation, because in Donna's words, "[w]e would be f*cked if she resigned."  Furthermore, yet another pretextual excuse was that AGEISS, Inc. could not handle the contract with the Republic of Ghana and that Plaintiff Ted S. Richan made misrepresentations about the Company in obtaining the contract,

6415603

when in fact, all contract documents and representations leading up to the awarding of the contract were reviewed, approved, and/or signed by Jeffrey B. Lawrence and/or Donna B. Lawrence.

5.      By cancelling the contract with the Republic of Ghana and terminating Ted. S. Richan in order to serve their own personal interests of attempting (unsuccessfully) to "rescind" the sale of AGEISS, Inc. to Plaintiff Ted S. Richan, Jeffrey B. Lawrence and Donna B. Lawrence caused the company to lose $212 million in gross revenues over three years and approximately $12 million in profits before interest, taxes, and debt.

## THE PARTIES

6.      Plaintiff Ted S. Richan ("Richan") is a citizen and resident of the Commonwealth of Puerto Rico, and has resided in Puerto Rico since in or about 2016.

7.      Defendant Jeffrey B. Lawrence ("Jeff Lawrence") claims to be a citizen and resident of Laramie, Wyoming, for income tax purposes, even though he spends more time residing in Colorado.

8.      Defendant Donna B. Lawrence ("Donna Lawrence") claims to be a citizen and resident of Laramie, Wyoming, for income tax purposes, even though she spends more time residing in Colorado.

9.      Defendant AGEISS, Inc. is a corporation incorporated in the State of Colorado with its principal place of business located in the State of Colorado. Defendant AGEISS, Inc. is registered to do business in the Commonwealth of Puerto Rico.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the action is between citizens of different States and the amount in controversy exceeds the sum or value of $75,000, excluding interest and costs.

6415603

11.     Venue is proper in the Commonwealth of Puerto Rico pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the District of Puerto Rico.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### A.  AGEISS, Inc. Offers Construction Design And Management To Government Agencies Nationally And Internationally

12.     Defendant AGEISS is a consulting firm that provides engineering, environmental, energy, facility operations and management, and professional consulting services principally to government agencies.

13.     AGEISS markets itself as providing services in a wide variety of areas.  On its website at www.AGEISS.com, AGEISS says that it provides "Engineering Services", including "Construction management."  In this respect, AGEISS states:

> AGEISS, a licensed A-E firm in Virginia, assists clients to complete capital improvement projects through planning, design, and construction support in the areas of architecture, design (including mechanical, electrical, and structural engineering) and construction management. Facility related projects include housing, community support facilities, medical facilities, education/training facilities, maintenance shops, industrial facilities, hangars, administration buildings, and operations buildings.
>
> Services include:
>
> - Mechanical engineering
> - Civil/Structural engineering
> - Electrical engineering
> - Architectural services
> - Construction management

14.     AGEISS also claims that it provides support for "Facility Operations and Management", including providing "quality management for renovation, new construction and re-use initiatives."  According to its website, www.AGEISS.com, AGEISS states:

4

AGEISS delivers the operational expertise to enhance federal facility readiness and efficiency wherever the government operates. We assist with facility management planning and project management. We facilitate stakeholder involvement, create data sharing programs, and provide project cost, schedule, and quality management for renovation, new construction, and re-use initiatives.

Services include:

- Base realignment and closure (BRAC) support
- Facility asset management
- Facility capital repair and replacement support
- Facility condition assessments
- Installation management and reporting
- Installation readiness and impact analysis
- Property transfer management
- Real property inventory management
- Training range and land management

15.   AGEISS also claims that it provides "Environmental Services" for government facilities, including "natural resource conservation", "cultural resource management" and providing planning services under the National Environmental Policy Act.  According to its website, www.AGEISS.com, AGEISS states:

AGEISS provides the environmental services that federal facilities need to improve efficiency and comply with regulations and executive orders. Our customer installations have won numerous awards for environmental program excellence.

Services include:

- Environmental compliance and quality
- Defense environmental restoration program support
- Habitat restoration
- NEPA planning
- Natural resource conservation
- Cultural resource management
- Pollution prevention and qualified recycling programs

16.   AGEISS also claims it provides services relating to "Energy and Sustainability", including providing services relating to water conservation, "renewable energy program

5

management," and "pollution prevention and waste minimization solutions."  According to its website, AGEISS states:

> AGEISS energy and sustainability professionals work hand in hand with agency staff at the installation and headquarters levels. We address energy conservation, water conservation, and other sustainability goals that are critical to operational efficiency and compliance with federal directives.
>
> Services include:
>
> - Energy efficiency assessments and audits
> - Energy management systems
> - Greenhouse gas emission inventory and reduction
> - Pollution prevention and waste minimization solutions
> - Renewable energy program management
> - Sustainable acquisition support
> - Sustainable building evaluations

17.     Finally, AGEISS claims it provides "Professional Services" to government agencies, such as "program and project management" and "policy development and implementation."  According to its website at www.AGEISS.com, AGEISS states:

> AGEISS helps transform agency directives and goals into workable policies, and then assists with implementation at the program and project levels. We provide the operational knowledge and experience you need to meet expectations for government innovation and streamlining.
>
> Services include:
>
> - Acquisition support
> - Business process optimization
> - Financial analysis
> - Policy development and implementation
> - Program and project management
> - Technical and scientific support
> - Training

18.     Although AGEISS is located in the United States, it also provides services internationally.  For instance, on December 18, 2018, AGEISS announced that it will continue "Support to Al Dhafra, Ali Al Salem, and Al Jaber Air Bases" under a new four-year contract after

6415603

having provided environmental program support of these bases for three prior years.  Under the renewed contract, AGEISS stated that it "will help meet Air Force requirements *and comply with host nation regulations* as these installations continue to expand their operations." https://www.ageiss.com/cms/ageiss-continues-support-to-al-dhafra-ali-al-salem-and-al-jaber-air-bases/ (emphasis added).  Al Dhafra Air Base is located in the United Arab Emirates; Ali Al Salem and Al Jaber Air Bases are in Kuwait.  AGEISS has performed work in other countries such as Portugal, Turkey, Germany, United Kingdom, Spain, Italy, Greenland, Japan, South Korea, Qatar, Afghanistan, and Kuwait.

19.     Additionally, AGEISS touts its ability to provide construction management and design services. AGEISS includes several pictures of construction sites on its website with descriptions of what they depict.  Some of these descriptions include:

- Provided Construction Management Support for Military Family Housing Construction for the U.S. Air Force;

- Performed MILCON Construction Management for the U.S. Navy;

- Performed Design Engineering at Al Udeid AB, Qatar; and

- Provided Planning, Budgeting, and Construction Management at Joint Base San Antonio.

20.     AGEISS has also recently performed construction management in the countries of Afghanistan and Qatar.

**B.  Jeff and Donna Lawrence Founded AGEISS, but Their Day-to-Day Involvement has Been Limited Since at Least 2013**

21.      AGEISS was created by Jeff and Donna Lawrence.  According to documents filed with the Colorado Secretary of State, on or about October 24, 1988, Jeff Lawrence and Donna B. Koesters, a/k/a Donna Lawrence, incorporated Greystone Environmental Services, Inc. in the State of Colorado.  On or about May 29, 1992, Jeff Lawrence and Donna Lawrence changed the name

7

6415603

of the corporation to Ageiss Environmental, Inc.  On or about October 17, 2008, the name of the corporation was changed from Ageiss Environmental, Inc. to AGEISS, Inc.

22.     According to documents filed with the Colorado Secretary of State, on or about January 16, 2016, Jeff and Donna Lawrence caused AGEISS to change its status from a domestic (Colorado) for profit corporation to a foreign for-profit corporation.  The new State of incorporation was designated as Wyoming, where Jeff and Donna Lawrence reside from time to time and of which they are citizens.

23.     AGEISS never had a physical corporate presence in Wyoming, other than Donna and Jeff Lawrence from time to time residing there, and having a storage unit that was opened in 2020 after AGEISS closed an administrative office in greater Denver, Colorado region that same year.  Any other work performed was conducted at the client site.  The reason for the change in the place of incorporation in 2016 was to take advantage of the lower income taxes in Wyoming.

24.     In anticipation of selling AGEISS to Ted Richan, Jeff and Donna Lawrence caused documents to be filed with the Colorado Secretary of State on July 6, 2020 changing the State of incorporation back to Colorado from Wyoming.

25.     From the time that Ted Richan began working at AGEISS in or about 2013 until December 30, 2020, Jeff and Donna Lawrence were the only shareholders of AGEISS.

26.     From the time that Ted Richan began working at AGEISS in or about 2013 until December 31, 2020, Jeff Lawrence's involvement in the day-to-day operations was limited, and he principally reviewed agreements prior to their execution and received status updates on contract related matters.

27.     From the time that Ted Richan began working at AGEISS in or about 2013 until June, 2020, Donna Lawrence's involvement in the day-to-day operations was limited, and she

6415603

principally reviewed the finances and indirect costs of AGEISS, checking-in with the Vice President who oversaw the support departments including Accounting, Contracting, Human Resources, and Information Technology. Even though Ted Richan was running operations for the company, they only met three times to discuss corporate strategy and business operations; once in December 2013, next in August 2014, and then August 2015, each time for a few hours.  Donna Lawrence rarely communicated directly with Ted Richan; rather, she communicated through Vice President Susan Walker.

28.     From June 2020 through December 2020 Donna Lawrence's involvement in the day-to-day operations was limited, and she principally reviewed the finances and indirect costs of AGEISS with the Accounting department.

## C. Ted S. Richan Ran the Day-to-Day Operations of AGEISS Since 2014, and Primarily Ran AGEISS from Puerto Rico Since 2018

29.     Ted Richan was hired on 4 November 2013 as a Senior Consultant.  He was promoted to Director of Corporate Development in or about 2014.  In this role, Ted Richan effectively managed the day-to-day operations and business strategy of AGEISS.  In this role, Ted Richan supervised between 150 and 240 employees at any given time and managed all business operations and business development.

30.     Ted Richan worked closely with AGEISS' Vice-President, Susan Walker, and they provided routine updates to each other on their respective activities.  Vice President Susan Walker and Ted Richan had a standing meeting to collaborate on company business. Susan Walker communicated on a regular basis with Donna Lawrence.  A true and correct copy of AGEISS' organizational chart as of April 23, 2019 is attached hereto as Exhibit 1.

31.     Although Ted Richan planned and executed the business strategy of AGEISS, he would prepare an annual update to the Strategic Plan and schedule an annual Executive Meeting

6415603

with Donna and Jeff Lawrence and Susan Walker.  The four of them only met two times, in December 2013 and August 2014.  A third Executive Meeting was held in August 2015 which was attended by Ted Richan, Susan Walker, and Donna Lawrence for a few hours.  Donna and Jeff Lawrence declined future invitations to meet and rarely communicated directly with Ted Richan.

32.     Procedurally, all contracts and related agreements were to be reviewed/approved by Jeff Lawrence prior to their commitment.  AGEISS' Contracts Manager coordinated contract matters directly with Jeff Lawrence.

33.     In 2014, AGEISS annual revenues dropped to $14 million.  Under Ted Richan's leadership, AGEISS' revenues rose 300%, to about $43,000,000.

34.     In or about 2016, Ted Richan secured a residence in the Commonwealth of Puerto Rico, and he began to spend a significant amount of time residing in, and operating AGEISS from, the Commonwealth of Puerto Rico.  In or about 2018, he declared residency in the Commonwealth of Puerto Rico.

35.     Ted Richan's decision to move to Puerto Rico was, in part, motivated by Jeff and Donna Lawrence's representations about Ted Richan's continued role at AGEISS and their commitment to growing the company.  Ted Richan also thought that his move to Puerto Rico could benefit AGEISS under then Acts 20 and 22 (now Act 60).  Ted Richan spoke with Donna Lawrence and Susan Walker about these benefits in or about the time that he first notified them of his intent to move to Puerto Rico.

36.     When Ted Richan moved to Puerto Rico, AGESISS, Inc., filed with the Puerto Rico Department of State a certificate to do business in Puerto Rico which included designating an office in Puerto Rico. Since then, it has filed annual reports with the Puerto Rico Department of State and has maintained its office in Puerto Rico.

6415603

37.     While residing in, and working from, the Commonwealth of Puerto Rico, Ted Richan made all of his decisions relating to the day-to-day operations and developed business strategy from the Commonwealth of Puerto Rico.  All communications from AGEISS and Jeff and Donna Lawrence were made to Puerto Rico.

38.     Ted Richan's Form 499R-2/W-2PR filed with AGEISS indicates that he resides in Puerto Rico, and AGEISS withholds employment taxes from Ted Richan's paycheck and remits them to the Commonwealth of Puerto Rico.

39.     AGEISS is registered to do business in the Commonwealth of Puerto Rico and pays taxes to the Commonwealth of Puerto Rico.  The sole reason that AGEISS registered to do business in the Commonwealth of Puerto Rico is because Ted Richan conducted his supervision of the day-to-day operations principally from the Commonwealth of Puerto Rico.

**D.  The Ghana Water Treatment Projects**

40.     In or about September 2018, AGEISS was informed about the potential of participating in the construction of a water treatment project in the Republic of Ghana.  The project was to rehabilitate water treatment plants to deliver clean water in Accra, Ghana.  On or about July 2019, a second project was introduced for the design and construct of a new water treatment plant in Begoro, Ghana.

41.     In 2018, Ted Richan met in Washington, D.C. with representatives of engineering, design and construction companies to collaborate in exploring and pursuing existing and future opportunities.

42.     The purpose of creating a "team" to perform on a project is to ensure that any proposal will provide all of the necessary services to design, construct and complete the project.

6415603

One team member serves as the project manager, ensuring that all aspects of the project are addressed and that each team member fulfills its part of the project.  In 2018, the team included:

      a.     AGEISS: Management, construction management and environmental;

      b.     RIG-RDS: Engineering support

      c.     Trinity International: Project Developer

      d.     HDR: Architect and engineering services

43.     These team members also met with representatives of the Export-Import Bank of the United States about the project on multiple occasions.  The Export–Import Bank of the United States (the "EXIM Bank") is the official export credit agency of the United States federal government. Operating as a wholly owned federal government corporation, the Bank "assists in financing and facilitating U.S. exports of goods and services".

44.     During the initial meeting with EXIM, Ted Richan took the opportunity to prime an engineering multiplier program (EMP). Ted Richan planned to provide program management and environmental consulting for the EMP, with the team members providing A-E support which would have increased the revenue to AGEISS from the project.

45.     In or about November 2018, Donna Lawrence signed the first agreement among the team members as the prime contractor. Jeff and Donna Lawrence knew exactly what was going on; Ted Richan fully advised AGEISS of the potential of the Ghana project and AGEISS' proposed role in it. Jeff and Donna Lawrence even knew about the information that AGEISS, as the prime contractor, was required to submit to the Government of Ghana in order to qualify for negotiating on the contract, and in fact Donna Lawrence approved the submission of this information to the Government of Ghana.  This information included prior experience in acting a prime contractor

on government contracts and detailed financial information (3 years' financial statements) about AGEISS.

46.     Throughout 2019, Ted Richan, while in Puerto Rico and elsewhere, continued to pursue the projects in Ghana, regularly communicating with team members and the EXIM Bank, and the government of the Republic of Ghana. His work included the delivery of a pre-feasibility studies to the Ghana Water Company, which documented the need for the projects and a conceptual plan.  It also included preparing and submitting pre-qualification of financials, project experience and resumes of all of the team embers.  Additionally, Ted Richan worked with the team to prepare and submit technical and cost proposals in or about 2020.

47.     The work also included securing financing and funding for the projects.  Although the Ghana Water Company was the client and the signatory to the construction contract, the Ghana Minister of Finance was the funding agent and the signatory to the financial agreement.  Ted Richan and the team worked with EXIM Bank to seek project financing.  In or about November 2020, the EXIM Board voted to notify the U.S. Congress of two potential water treatment and infrastructure transactions in Ghana totaling $229 million.

48.     At the direction of the Government of Ghana, the project evolved into a design - build project.  AGEISS had experience in performing construction management, and had previously provided construction management support overseas.  Ted Richan kept AGEISS, and Jeff and Donna Lawrence, informed of the status of the Ghana projects and AGEISS' role as prime. In or about March 2020, Jeff Lawrence, on behalf of AGEISS, reviewed and approved the teaming agreements and the non-disclosure agreements for the Ghana projects. Ted Richan and Jeff Lawrence planned to travel to Ghana in March 2020 to meet with Ghana officials and their local team members, but the onset of COVID-19 prevented their travel.

6415603

49.     Ted Richan approached the Ghana project in a manner to ensure that AGEISS could perform on the contract if it so chose or choose to let the contract lapse without liability to the company. Ted Richan also preserved other options in the negotiations, profitable to AGEISS.

E.  **The Ghana Project and the Sale of the Company**

50.     In or about July 2019, Ted Richan, while living in Puerto Rico, received a call from Jeff Lawrence, who indicated that he and Donna Lawrence desired to sell the AGEISS. Ted Richan proposed to Jeff Lawrence to sell the company to an Employee Stock Ownership Plan (ESOP).

51.     In or about March 2020, negotiations for the sale of the company to an ESOP broke down. Ted Richan and Susan Walker investigated whether they could purchase AGEISS, and under what terms.  Susan Walker ultimately decided not to participate.

52.     In March 2020, Ted Richan, Donna Lawrence and Jeff Lawrence negotiated terms, and ultimately agreed upon a purchase price of $11 million, adjusted for net working capital, and a 25% share of the net proceeds from the sale of the company. Ted Richan negotiated the sale from his office and residence in Puerto Rico.

53.     In or about May 2020, Ted Richan received a draft purchase and sale agreement, but the parties agreed to delay the purchase of AGEISS to coincide with the new tax year (2021).

54.     An integral part of the proposed terms, and indeed part of the purchase price, was that Ted Richan was responsible for ensuring that AGEISS paid off a $5 million bank loan.  Also, under the agreement, described at length below, Ted Richan agreed to pay $6 million (adjusted for net working capital) to Jeff and Donna Lawrence, which amount would be initially loaned by Jeff and Donna Lawrence.  Once the $5 million bank loan was paid through the profits of the company, Ted Richan would then repay the $6 million loan from Jeff and Donna Lawrence (thus totaling $11 million, adjusted for net working capital) out of the profits of the company.

14

55.     The Ghana projects were a pivotal factor in the transaction and Ted Richan's decision to purchase AGEISS.  Jeff and Donna Lawrence knew, and agreed, that Ted Richan – already a citizen and resident of Puerto Rico – would create a Puerto Rico LLC (AGEISS International LLC) and seek an Act 60 decree from the Puerto Rico Department of Treasury to obtain 4% income tax treatment for exported services.  AGEISS would then subcontract to AGEISS International LLC, which would then pay off the bank note and the loan from Jeff and Donna Lawrence.

56.     In addition to subcontracting the Ghana projects to AGEISS International, it was contemplated that AGEISS would subcontract management and other services over time to the Puerto Rico entity to further take advantage of the Act 60 decree. Ted Richan, Donna Lawrence, and AGEISS' Director of Administration participated in meetings and engaged consultants to assist with the strategy to hire employees in Puerto Rico to provide program management, financial, and human resource services for the company.

57.     As agreed, Ted Richan created AGEISS International, LLC in July 2020 as a Puerto Rico LLC.

58.     Also integral to Ted Richan's consideration to purchase the company was his request that AGEISS be re-domesticated in Colorado. Ted Richan requested that Jeff and Donna Lawrence terminate AGEISS' incorporation in Wyoming and return its State of incorporation to Colorado where AGEISS possessed office space that provided a proper image for the company and future clients, to include the Government of Ghana which was the principal reason for the request to move headquarters.  On July 11, 2020 – the same month that AGEISS International LLC was created, Jeff Lawrence filed documents with the Colorado Secretary of State re-establishing AGEISS as a Colorado domestic for-profit corporation.  Jeff Lawrence subsequently dissolved

15

6415603

AGEISS' Wyoming incorporation. AGESISS, Inc., filed the corporate documents with the Puerto Rico Department of State as well.

59.     For the fiscal year 2020, AGEISS was projecting losses of up to $1 million.  Ted Richan proposed a plan to turn the company around which included, among other changes, reducing his own compensation. The plan was implemented and in or about June 2020, and Jeff and Donna Lawrence requested that Ted Richan become the President of AGEISS.  Ted Richan declined because he wanted to assume the title only after the purchase and sale documents were fully executed, but he agreed to assume the title of Interim President, assuming all duties.

60.     On December 31, 2020, Ted Richan, Jeff Lawrence and Donna Lawrence executed a series of agreements effectuating the sale of AGEISS to Ted Richan.

61.     A lawyer retained by Jeff Lawrence and Donna Lawrence drafted all of the agreements.

**F.   The Sale of AGEISS to Ted Richan**

62.     Under Section 1.1 of the Stock Sale and Purchase Agreement ("SSPA"), effective December 31, 2020, Plaintiff Ted Richan purchased "all right title and interest" in all of the issued and outstanding Class B Non-Voting Shares for $6 million, plus or minus a "Net Working Capital Adjustment." A true and correct copy of the SSPA is attached hereto as Exhibit 2.

63.     The purchase price of $6 million was paid through a loan from Jeff and Donna Lawrence, evidenced by a Promissory Note executed on the Closing Date (December 31, 2020). In accordance with the terms of the transaction, ***Ted Richan owned all of the outstanding non-voting shares of AGEISS as of the Closing Date***, and all of the voting shares of AGEISS would be delivered to Ted Richan once the bank loan and the Promissory Note were paid in full.

16

6415603

64.     Under Section 3.1(a), Ted Richan was appointed to serve on the Board of Directors along with Jeff Lawrence and Donna Lawrence.

65.     Under Section 3.1(b), Ted Richan, Jeff Lawrence and Donna Lawrence were to execute Employment Agreements that were supposed to be attached as an exhibit to the SSPA. Jeff and Donna Lawrence did not supply final copies of the Employment Agreements.  Jeff and Donna Lawrence represent to Ted Richan that the parties should execute the SSPA and related documents and that the Employment Agreements were to be included in the SSPA.  They were not.

66.     On January 11, 2021, Jeff Lawrence filed an amendment to the AGEISS Articles of Incorporation with the Secretary of State of Colorado.  Under Section 2 of the Amended Articles of Incorporation, Ted Richan was appointed to serve as a director of the Company.

67.     Pursuant to Section 5 of the amended Articles of Incorporation, Ted Richan had equal distribution and liquidation rights to AGEISS: "Class A Voting Common Stock and Class B Nonvoting Common Stock shall have identical rights to distribution and liquidation proceeds."  A true and correct copy of the amended Articles of Incorporation are attached hereto as Exhibit 3.

68.     As of the filing of this verified Complaint, there have been no other amendments, such that Ted Richan nominally remains on AGEISS' Board of Directors, and he possesses equal distribution and liquidation rights by virtue of his ownership of all of the Class B non-voting shares of AGEISS.

**G.  Jeff and Donna Lawrence's Unsuccessful Attempt to Back Out of the SSPA, Breach of the Duty of Loyalty through Self-Dealing and Harming AGEISS, and Illegal Discriminatory Conduct**

69.     In January 2021, Ted Richan assumed the role of President of AGEISS, responsible for all operational, strategic, and financial aspects of the company.

17

70.     After years of preparation, planning and negotiation – all with the full knowledge of Jeff and Donna Lawrence – Ted Richan executed the contract with the Republic of Ghana for the rehabilitation and construction of water supply projects in Weija ($112 Million) and Begoro ($100 Million).

71.     At that time, Donna Lawrence expressed her enthusiasm over securing the Ghana contracts.

72.     When completed, AGEISS projected a net profit before interest, taxes, and debt of $12 million over 3 years, and Ted Richan had preserved other options for AGEISS to ensure profitability.

73.     On February 10, 2021, Ted Richan received an e-mail from an older employee who stated that she was resigning because of long-term harassment and a hostile work environment created by the Accounting Manager, Sadie Suniga.  The employee's email stated she had discussed these issues with Human Resources.  In or about May 2020, the same employee submitted a three-page letter to the Human Resources Manager detailing long-standing conduct which, if true, amounted to discrimination and the creation of a hostile work environment, in violation of federal law.

74.     Among the comments the employee said came from Ms. Suniga were "maybe you are too old to keep up with the position's requirements and you need to look in the mirror and really be honest with yourself."

75.     Ted Richan, as President and a member of AGEISS board of directors, immediately saw this as a potential violation of the federal Equal Employment Opportunity laws, and on February 11, 2021, directed the Human Resources Department to conduct a prompt and immediate internal EEO investigation and to consult external EEO counsel for amongst, other things,

6415603

conducting an EEO assessment at AGEISS and providing EEO training to the workforce. Ted Richan advocated taking a proactive approach to a credible incident of workplace harassment and discrimination based on age, which is consistent with federal law, policy, and regulations.

76.    Ted Richan understood that there were long-standing issues with Sadie Suniga's behavior. Donna Lawrence wrote Ted Richan saying: "Wanted to mention that if we do not have any strong reprimands in either person's file, then we are partly responsible". Also, in a phone call on about February 11, 2021, Jeff Lawrence stated, in substance and in part, that they knew about Sadie's behavior, that there have been a lot of problems and "she [Sadie Suniga] is the common denominator." When Ted Richan requested the Human Resources Manager to provide him Sadie Suniga's human resources file, he was informed that after nearly 10 years of employment at the company there was nothing in the file.

77.    Ted Richan was surprised to learn there was nothing in Sadie Suniga's file. The following was known by Ted Richan:

- Saidie Suniga and the Human Resources Manager required mediation to solve the working relationship between them.

- Sadie Suniga yelled at her supervisees and was hostile towards them. Instead of directly counseling Sadie Suniga to curb her behavior, the senior management team and accounting office was required to take a course in crucial conversations

- Ted Richan counseled Sadie for her behavior in or about June 2020, where she admitted that she yelled at and behaved badly towards coworkers.

- Instead of counselling Sadie Suniga, an employee in the accounting office was sent to "assertiveness training" in order to deal with Sadie Suniga.

19

78.    On February 12, 2021, Donna Lawrence emailed Ted Richan to caution him to be more concerned about protecting AGEISS financial stability than following federal law. Specifically, Donna Lawrence wrote:

> I think it is important to put AGEISS' financial stability first in how this situation is handled, and the end result be that [Ms. Suniga] stays during this critical and vulnerable time.  She is very sensitive right now, and it would not take much for her to resign.  AGEISS would be in a world of hurt if that happened.

79.    Donna Lawrence also stated that "we would be f**ked if Sadie resigned."

80.    As part of their efforts to protect Ms. Suniga, Donna Lawrence proposed, and may have acted, to "fix" personnel records to add new documents that defend personnel actions.

81.    Donna and Jeff Lawrence began a practice and pattern of harassment that constituted a hostile work environment, as well as a series of discriminatory and retaliatory actions against Ted Richan that started with stripping him of supervisory duties, for the first time – ever – micromanaging his work and essentially demoting him before illegally terminating him. In doing so, they stopped the internal EEO investigation into claims of harassment and age discrimination from being performed.

82.    Shortly after this email, Donna Lawrence began to complain about Ted Richan's management of the AGEISS, even though he had been in charge of the day-to-day operations since 2014.  Ultimately, Jeff and Donna Lawrence stripped Ted Richan of management responsibilities.

83.    Ted Richan contacted Sadie Suniga via telephone in or about March 2020 to inform her of the results of the EEO investigation and to schedule counseling meeting.  He provided her documentation to be placed in her human resources file. Sadie Suniga understood and was expecting the conversation.  Sadie Suniga and Ted Richan then verbally agreed upon a time to meet for the employment counselling session.  A meeting invitation was sent via email by Ted

Richan to Sadie Suniga, but it was then promptly rejected by the Accounting Manager, presumably at the direction of Donna Lawrence.

84.     On February 26, 2021, Donna Lawrence sent an email to Ted Richan expressing concern over the Ghana contracts.  This was the first time that Donna Lawrence expressed any reservations whatsoever about the Ghana contracts, whereas upon signing of the contracts weeks earlier expressed eagerness to get started.

85.     Donna Lawrence stated that she was awoken in the middle of the night, panic stricken, over how much the Ghana contract might cost given climate change and COVID.

86.     To reiterate, Ted Richan and AGEISS worked with team members on every aspect of these contracts, for over two years.  They were part of a teaming consortium that had two years from January 2021 to commence the work, monetize the contract, or terminate the contract.  Ted Richan and the Director of Administration, Brieann Staker, worked together with Jeff and Donna Lawrence throughout the entire process on:

    a.  Drafting and reviewing terms and conditions of contract documents

    b.  Coordinating financial matters with AGEISS' bank and receiving a comfort letter;

    c.  Establishing a Commercial Pool within AGEISS' financials;

    d.  Approving indirect expenses related to the projects;

    e.  Creating AGEISS International in order to subcontract work to the entity and obtain tax benefits under Act 60; and

    f.  Consulting with Attorneys and advisors on the projects.

87.      Indeed, Jeff Lawrence executed the teaming agreements and the non-disclosure agreements and Donna Lawrence signed the Memorandum of Understanding between team members in or about November 2018 establishing AGEISS as the prime contractor.

6415603

88.     Further, Jeff and Donna Lawrence negotiated the SSPA and the related agreements with the understanding that the Ghana contracts, as performed by AGEISS International, LLC, presented an opportunity for an early payoff of the bank note and personal loan due to reduced tax exposure. On March 12, 2021, Jeff and Donna Lawrence held a board of directors meeting without Ted Richan, who had previously requested a one-day adjournment of the meeting.  During this meeting, they voted to withdraw from the Ghana contracts entirely and to not pursue other options. They also stripped Ted Richan of his authority relating to the contracts. The justifications that Jeff and Donna Lawrence provided for withdrawing from the contracts were a pretext to attempt (unsuccessfully) to rescind the SSPA.

89.     On information and belief, it is alleged that Jeff and Donna Lawrence changed their mind about selling AGEISS to Ted Richan through a transaction that allowed Ted Richan to purchase AGEISS through the profits of the business.

90.     Jeff and Donna Lawrence's actions in withdrawing from the Ghana contract are a breach of the duty of loyalty represent self-dealing because they caused AGEISS to withdraw the Ghana contract and to not pursue other options to further their own interests in unsuccessfully rescinding the SSPA and related agreements.  In short, they had sellers' remorse, and withdrew from the lucrative contracts because this is how they thought they could get out of the deal with Ted Richan.

91.     The withdrawal of the Ghana contracts financially harmed AGEISS and Ted Richan.

92.     On March 30, 2021, Jeff and Donna Lawrence wrote to Ted Richan rescinding the SSPA and terminating Ted Richan's employment.

22

93.     Under the express terms of the agreement, Ted Richan has committed no breach and created no event of default, thus Jeff and Donna Lawrence's attempt to "Rescind" the SSPA is, and was, ineffective.

94.     Under the express terms of the SSPA and related agreements, Ted Richan remains the sole owner of all of the outstanding Class B non-voting shares of AGEISS, and thus has standing to bring this action.

## H.  Derivative and Demand Futility Allegations

95.     Plaintiff Ted Richan brings this action derivatively in the right and on behalf of AGEISS to redress injuries suffered, and to be suffered, by AGEISS as a direct result of breaches of fiduciary duty and unjust enrichment.

96.     Plaintiff Ted Richan is a shareholder of AGEISS and was a shareholder of AGEISS at the time of the wrongdoing alleged herein, and has been a shareholder of AGEISS continuously since that time.

97.     Plaintiff Ted Richan will adequately and fairly represent the interests of AGEISS and its shareholders in enforcing and prosecuting its rights.

98.     AGEISS is named as a nominal defendant in this case solely in a derivative capacity.

99.     The wrongful acts complained of herein subject, and will continue to subject, AGEISS to continuing harm because of the adverse consequences of the actions are still in effect and ongoing.

100.     Jeff and Donna Lawrence are the only other two members of the Board of Directors and the only other shareholders of AGEISS.

23

6415603

101.    Ted Richan cannot demand that the board of directors, the majority of which are Jeff and Donna Lawrence, bring a lawsuit against themselves for their self-dealing conduct.

102.    Accordingly, any demand upon the AGEISS Board of Directors to bring an action against Jeff and Donna Lawrence would be futile.

## CAUSES OF ACTION

## COUNT ONE

**(Against Individual Defendants for Breach of Fiduciary Duty)**

103.    Plaintiff Ted Richan incorporated by references and realleges each of the foregoing allegations as if fully set forth herein.

104.    Jeff Lawrence and Donna Lawrence owed and owe AGEISS fiduciary obligations, including the obligations of good faith, fair dealing, loyalty and care.

105.    Included in these duties are the duty to not engage in self-dealing.

106.    Jeff Lawrence's and Donna Lawrence's actions in making the unilateral decision to withdraw from the Ghana contracts were motivated in primary and significant part by their desire to "rescind" their agreement to sell AGEISS to plaintiff Ted Richan and regain full ownership and control of AGEISS.

107.    The decision and actions to withdraw from the Ghana contracts inflicted, and will continue to inflict, significant damage to AGEISS.

108.    As a result of the misconduct alleged herein, Jeff Lawrence and Donna Lawrence are liable to AGEISS for the damages suffered by AGEISS, which are estimated in excess of $10,000,000.00.

WHEREFORE, Plaintiff Ted Richan demands judgment against the defendant for:

6415603

    a.   Compensatory damages to AGEISS;

    b.   Consequential damages to AGEISS;

    c.   Reasonable attorneys' fees and costs, including expert fees and expenses; and

    d.   Such other relief at equity and law as the Court deems proper and just.

## COUNT TWO

### (Against Individual Defendants for Waste of Corporate Assets)

109.    Plaintiff Ted Richan incorporated by references and realleges each of the foregoing allegations as if fully set forth herein.

110.    The Ghana contracts were a valuable asset belonging to AGEISS.

111.    Defendants Jeff Lawrence and Donna Lawrence breached their fiduciary duty by deciding to withdraw from the Ghana contracts.

112.    As a result of Jeff Lawrence's and Donna Lawrence's improper conduct and breaches of fiduciary duty, AGEISS has wasted valuable corporate assets by either failing to follow through and perform on the contracts or pursuing other alternatives which would have resulted in significant profits to AGEISS.

113.    By reason of the foregoing, AGEISS was damaged.

114.    As a result of the misconduct alleged herein, Jeff Lawrence and Donna Lawrence are liable to AGEISS for the damages suffered by AGEISS, which are estimated in excess of $10,000,000.00.

WHEREFORE, Plaintiff Ted Richan demands judgment against the defendant for:

    a.   Compensatory damages to AGEISS;

    b.   Consequential damages to AGEISS;

6415603

c.  Reasonable attorneys' fees and costs, including expert fees and expenses; and

d.  Such other relief at equity and law as the Court deems proper and just.

## COUNT THREE

### (Against the Individual Defendants for Unjust Enrichment)

115.    Plaintiff Ted Richan incorporated by references and realleges each of the foregoing allegations as if fully set forth herein.

116.    Through the wrongful course of conduct and actions complained of herein, Jeff Lawrence and Donna Lawrence were unjustly enriched at the expense of, and to the detriment of AGEISS.

117.    Specifically, Jeff Lawrence's and Donna Lawrence's conduct in terminating the Ghana contracts and terminating Ted Richan's employment was a naked, but unsuccessful, attempt to "rescind" their agreement to sell AGEISS to Ted Richan.

118.    The wrongful conduct was continuous and resulted in ongoing harm to the Company.

119.    Jeff Lawrence and Donna Lawrence were unjustly enriched by regaining full control of AGEISS, its revenues and profits while breaching their fiduciary duties to the AGEISS, as alleged herein.

120.    AGEISS and Ted Richan have been damaged as a result of Jeff Lawrence's and Donna Lawrence's conduct.

121.    Ted Richan, individually and as a shareholder of AGEISS, seeks, among other demands, a restitution Order from the Court disgorging all profits, disbursements, benefits, compensation, and increased value of Jeff Lawrence's and Donna Lawrence's shares, all obtained

6415603

by them as a result of their wrongful course of conduct and fiduciary breaches, and which are estimated in excess of $6,000,000.00.

WHEREFORE, Plaintiff Ted Richan demands judgment against the defendant for:

    e.   Compensatory damages;

    f.   Consequential damages;

    g.   Reasonable attorneys' fees and costs, including expert fees and expenses; and

    h.   Such other relief at equity and law as the Court deems proper and just.

## COUNT FOUR

### (Against the individual Defendants for Gross Mismanagement)

122.    Plaintiff Ted Richan incorporated by references and realleges each of the foregoing allegations as if fully set forth herein.

123.    By their actions alleged herein, Jeff Lawrence and Donna Lawrence, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of AGEISS in a manner consistent with the operations of a corporation.

124.    As a direct and proximate result of the Jeff Lawrence's and Donna Lawrence's gross mismanagement and breaches of duty alleged herein, AGEISS has sustained significant damages.

125.    As a result of the misconduct and breaches of duty alleged herein, Jeff Lawrence and Donna Lawrence are liable to AGEISS for the damages suffered by AGEISS, which are estimated in excess of $10,000,000.00.

WHEREFORE, Plaintiff Ted Richan demands judgment against the defendant for:

    i.   Compensatory damages;

    j.   Consequential damages;

27

6415603

     k.   Reasonable attorneys' fees and costs, including expert fees and expenses; and

     l.   Such other relief at equity and law as the Court deems proper and just.

126.    Plaintiff demands a jury trial for all causes of action.

WHEREFORE, it is respectfully requested that based on the facts alleged in this Complaint, this Honorable Court enter judgment against defendants for the amounts requested herein, and impose upon plaintiff the payment of costs and attorney's fees.

In San Juan, this 12th day of May, 2021.

Respectfully submitted,

**S/ FRANCISCO E COLÓN-RAMÍREZ**
FRANCISCO E COLÓN-RAMÍREZ
USDC-PR Bar No. 210510
E-mail: fecolon@pbnlaw.com
          fecolon@colonramirez.com
**PORZIO, BROMBERG & NEWMAN, P.C.**
Street:  1225 Ponce de León Ave.
         Suite 1503
         San Juan, PR 00907
Postal: PO Box 361920
         San Juan, PR 00936-1920

Counsel to Ted S. Richan

6415603

## VERIFICATION

I, Ted S. Richan, the complainant named in the foregoing Verified Complaint, of due age and sound mind, pursuant to 18 U.S.C. § 1746, certify and declare under penalty of perjury that the facts and allegations contained herein are true, except so far as they are therein stated to be on information and belief, and that, so far as they are therein stated to be in information and belief, I believe them to be true.

Dated: May 12, 2021

TED S. RICHAN

6415603